By the Court.—Sedgwick, J.
It was not contended that, under the statute of Vermont, there was a forfeiture of the stock upon non-payment of the assessments. It was tacitly conceded that the title of the delinquent would not pass from him until a sale had been made, by valid proceeding, under the statute, to a purchaser. The statute provided that any excess of the purchase price, beyond the assessment and all proper charges, should be paid to the delinquent. Down to the sale, the interest of the company was the amount of the assessment and the proper charges, and the company had not a title to the stock. Therefore the plaintiffs were entitled to the stock and the evidences thereof, unless the proceedings to the sale were those made by law, to divest the title, or if before a sale there was a tender to the company of the amount of the assessments and charges. It must be conceded *413 that the steps contemplated by law must be made in strict compliance with the law.
The validity of the sale depends upon compliance with the by-law of December 19, 1859, passed in the city of New York, in connection with the other by-laws and statute, or upon a construction of such other bylaws and. the statute, apart from the by-law of December 19, 1859.
I think the learned judge was correct in deciding, that after the plaintiffs’ testator (who was alive at the time of trial) had shown his general title to the stock at a former time, and that he had received no notice of the sale, either personally or by mail, the burden of proof was upon the defendants to show the taking of all the steps necessary for the passing of the title. The answer claimed that there had been a sale. Perhaps not so much was necessary to place the burden of proof upon the defendants. The defendants examined witnesses to show that notice had been given through the mails. The testimony was not positive or definite as to the particular notice to the plaintiffs’ testator. It was of a general kind, that all the notices had been sent by mail to the delinquents. How much of the testimony, as to the particular notice, was an inference by the witness, and how much doubt, if any, there was in the witness’s mind, was perceived by the judge before whom the witness was in person, and can not be estimated as well by an appellate court. His judgment on the subject must be final, as it would have been if he had given a greater weight to the testimony on this point. It is the fact, then, that the notice by mail, or personal, was not given, and the defect is fatal. The defect is not cured by the proof that the notice, as published, was seen by the plaintiffs’ testator. He could rest upon the law that such a notice, alone, would not support a sale that would divest his title.
It is claimed, however, and correctly, that the by *414 law of December 19, 1859, was invalid as such,, because being in the nature of a corporate act, it was passed in New York, out of Vermont, in which alone a corporate act would be valid. But in looking to the other by-laws made in Vermont, and to the statute off that state, we see that the sale was not authorized by them. There was a resolution of August 16, 1865, referring in part to the present assessment, “that the-treasurer is hereby empowered to sell the stock upon which said assessments shall remain unpaid, at public auction, in accordance with the by-laws.” The only by-law in evidence is, after giving the directors-power to assess, that the directors “in case any stockholder shall neglect or refuse to pay such assessment, shall empower the treasurer to sell by public auction the shares of such delinquent, pursuant to section 12 of chapter 86 of the General Statutes of the state of Vermont.” The statute itself was that “ the treasurer may sell by public auction the shares of such delinquent, under such regulations as the corporation by its by-laws may direct.” By the statute and by the by-laws no sale could be made without regulations for it being first made by the by-laws.' There were no such regulations, and there could, therefore, be no valid sale.,
I think also that the tender of the amount of the assessment as against the company and the defendant. Ely, who had knowledge of the tender, availed to deprive the company of power to proceed (after it was-made) to sale, even if the proceedings were regular. As to whether, in fact, the tender was made, we are-content with the finding of the judge, supported as it is by one positive witness and corroborating circumstances. We have seen that the title of the stock was: in plaintiff’s testator, and that it was only charged with the right of the company to obtain by its sale the amount of the assessments and proper charges. The rights of the company would have been sat *415 isfied and discharged by a payment. The rejection of the tender was not placed upon a deficiency of amount, or that it was not in money. Strictly there should have been an offer to pay the charges, and proof of ability .and readiness to do it, upon being informed as to what they were. The necessity for this was obviated by the defendant Ely saying, among other things, that he would buy-in,for plaintiff’s testator, and the assessment could be paid afterwards ; that it would break down the sale to withdraw those particular shares, &c., &e.
This being true, however, if the judgment below could be supported on no other ground than that of tender, it should have provided that the tender should be kept good, and the plaintiff pay the money and interest and charges as a condition of relief. Equity would not require this, however, if the alleged or attempted sale was invalid for want of legal proceedings, or if, in fact, the sale was only colorable, ¡and not, in fact, a sale as between the company and the defendant Ely. In neither case would any right -of the plaintiff rest upon the making of the tender.
I do not think it expedient in this case to examine whether the mere fact of there being no contract of sale under the statute of frauds, binding the company and defendant Ely, would of itself give the plaintiff a right to claim that no sale had taken place or was invalid for that reason. But undoubtedly the learned judge was right in giving attention to the fact that the defendants had not proved such a contract. That fact with others, viz., the declaration before the sale that it would be bought in for the plaintiff’s testator, the subsequent declaration that he might still have the ¡stock upon the payment of the assessment, the resolution of the company, at which defendant Ely was present, afterward rescinded, that the stock of Mr. Mitchell, bought by Mr. Ely at a sale for assessment, “having been by him repeatedly offered to the com *416 pany at the costs to him, we accept his proposition and the stock held by him,” and the non-payment by defendant Ely of the purchase-money—was evidence as to whether the sale that took place was meant to be more than a form, and whether either party had an intention to make a sale or purchase. These facts, too, might all be weighed on the question as to the tender. I do not, however, proceed in supporting the judgment upon the mere fact that there was no real sale. It is not necessary, and it may be that the judge below had no such question by itself before him. The judgment below can be affirmed on the invalidity of the sale under the statute of Vermont and the by-laws of the company.
In what has already been said, the propositions made in the strong argument by appellant’s counsel have been considered directly or inferentially for the most part. He particularly urged that a tender to defendant Ely was not a tender to the company, because there was no evidence that he had charge of the fiscal concerns, and had no implied authority to receive money in payment of indebtedness. The proposition of law involved might be sound, yet we should consider that there was evidence that at the time of the tender the treasurer of the company was standing by, so that he was able to testify to what took place at the interview, although his remembrance of it was not the same as that of a witness for the plaintiff.
It is unnecessary to give attention to the argument, in relation to the conclusion of law by the judge, “that the purchase of the stock by defendant Ely, a director and president of the company, was ineffectual to make a valid sale of the stock, unless the same should be adopted or approved by Mitchell, the stockholder, and that he not having approved of, adopted, or acquiesced in said sale, was not, nor is the plaintiff bound thereby.” An examination of the law on this *417 subject is not required in this case, as we have come to the conclusion that the sale was invalid for other reasons.
The judgment should be affirmed with costs.
Curtis, J., concurred.